UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CALLOWAY PAYNE, | ) | 1:11CV2446 |
| | ) | |
| Petitioner | ) | JUDGE JAMES GWIN |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| DAVID BOBBY, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | RECOMMMENDATION |

McHARGH, MAG. J.

The petitioner Calloway Payne ("Payne") filed a petition pro se for a writ of

habeas corpus arising out of his 2009 convictions for aggravated robbery and other

crimes in the Cuyahoga County Court of Common Pleas.  (Doc. 1.)  In his petition,

Payne raises four grounds for relief:

> 1. The evidence presented was not legally sufficient to support the conviction for having a deadly weapon and firearm specifications.
>
> 2. Appellant was denied due process of law because the indictment charging him with Aggravated Robbery was constitutionally defective.
>
> 3. Where the Prosecution suppressed exculpatory evidence.
>
> 4. Where Appellant was subjected to an impermissibly suggestive identification procedure.

(Doc. 1, § 12.)  The respondent has filed a Return of Writ (doc. 7), and Payne has

filed a Traverse (doc. 8).

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural

background:

> On October 12, 2008, in the early morning hours, William Smith
> ("Smith") looked out a window and observed two men attempting to
> steal his mother's car, which was parked on Hosmer Avenue in
> Cleveland.  Smith woke up his sister Anastasia and ran outside to stop
> the attempted theft.  While Smith was confronting the two men who
> were inside his mother's car, a silver Dodge Intrepid pulled up between
> Smith and his mother's car, and the driver pointed a gun at Smith.
> Smith yelled to his sister, who had followed behind him, to go back
> inside the house.  Smith looked at the man driving the Intrepid for
> about four seconds until the man drove up the street and stopped to
> pick up the two men who had attempted to steal Smith's mother's car.
> Smith watched the car drive off, and then he immediately called the
> police.
>
> As the police were responding to the scene, they observed a silver
> Dodge Intrepid, which matched the description Smith had reported,
> near East 93rd Street and Harvard Avenue.  When the driver of the
> Intrepid noticed the police, he accelerated, and the police pursued the
> car for several blocks until the car stopped and the occupants fled on
> foot.
>
> Officer Allen testified that he did not see the driver's face but he
> estimated that the driver was six feet tall and between 225-250
> pounds.  The driver was wearing a dark top, pants, and a dark hat.
> The other individuals were shorter and thinner.  Officer Allen followed
> the driver who ran down Gaylord Avenue.  Officer Keane testified that
> he observed a man who fit the description of the driver running
> between two houses about two blocks away from the Intrepid.  Keane's
> partner, Officer Lentz, followed the driver to a house where they
> arrested him and brought him back to Smith and his sister for a cold
> stand identification.
>
> Officer Keane asked Smith and Anastasia if they thought they would
> be able to identify "a possible suspect."  The police did not make any
> statements about the suspect nor did they describe what role the
> suspect might have played in the attempted theft.  Upon seeing the
> suspect, Smith immediately stated that the suspect was the man who

was driving the silver Dodge Intrepid and who had pointed a gun at him.  Payne denied being involved in an attempted theft and claimed that he was just walking home from his girlfriend's house.

At approximately 6:30 a.m. the same morning, the owner of the Dodge Intrepid, Mary Ann Morgan-Bey ("Morgan-Bey"), discovered her car had been stolen.  When she contacted the police, she learned that her car had been involved in a robbery and had been impounded.

The Dodge Intrepid was processed and searched.  Police found a BB gun inside the car as well as fingerprints of two other individuals and not Payne's.  The State disclosed the identities of the individuals whose fingerprints were found in the car approximately one week before trial.  On the day of trial, Payne waived his right to speedy trial and requested a continuance until after the police arrested the two individuals.  The court denied the motion.

Payne waived his right to a jury.  At the close of the State's case, Payne moved for acquittal pursuant to Crim.R. 29.  The court granted the motion as to one count of aggravated robbery and denied the motion as to the other three counts.  At the close of the evidence, the court found Payne guilty of one count of aggravated robbery, one count of attempted theft of a motor vehicle, and one count of receiving stolen property.  The court sentenced Payne to three years on the firearm specification, three years for aggravated robbery, and six months for the attempted grand theft and receiving stolen property.  The court ordered the three years on the firearm specification to run consecutive to the three years for aggravated robbery as mandated by R.C. 2941.145.  The remaining counts were to run concurrently for a total six-year sentence.

(Doc. 7, RX 15, at 1-4; State v. Payne, No. 92976, 2010 WL 2203012, at *1-*2 (Ohio

Ct. App. June 3, 2010).)


A.  Direct Appeal

Payne filed a timely appeal, setting forth the following four assignments of

error:

3

1. Whether appellant was denied due process because the evidence presented was not legally sufficient to support convictions for having a deadly weapon and for firearms specifications.

2. Whether appellant was denied due process of law because the indictment charging him with  aggravated robbery is constitutionally defective.

3. Whether defendant's rights to due process have been violated where the prosecution suppressed exculpatory evidence.

4.  Whether defendant's rights to due process have been violated where the identification is tainted because the defendant was subject to an impermissibly suggestive identification procedure.

(Doc. 7, RX 10.)  On June 3, 2010, the court of appeals affirmed the convictions.

(Doc. 7, RX 15; Payne, 2010 WL 2203012.)

Payne next appealed to the Supreme Court of Ohio, asserting the following

four propositions of law, verbatim:

1.  Where the evidence presented by prosecution was not legally sufficient to support the conviction for having a deadly weapon and for firearm specification as defined under R.C. 2923.11 appellant was denied due process under the U.S.C.A. Const. Amend 14th.

2.  Appellant right's to due process were violated because the indictment charging him with aggravated robbery is constitutionally defective under the U.S.C.A. Const. Amend. Fifth and Fourteenth.

3.  Where appellant's prosecution suppress exculpatory evidence and appellant's rights to due process under the U.S.C.A. Const. Amendt. Fifth and Fourteenth and also rights to Ohio Rules of Crim. Procedure (Rule 16B) was violated.

4.  Where appellant's was subjected to an impermissibly suggestive identification procedure the identification is tain[t]ed and violates defendant's rights to due process under the USCA Const. Amendt. Fifth and Fourteenth.

(Doc. 7, RX 17.)

4

On Oct. 13, 2010, the state high court denied leave to appeal, and dismissed

the appeal as not involving any substantial constitutional question.  (Doc. 7, RX 18;

State v. Payne, 126 Ohio St.3d 1600, 935 N.E.2d 46 (2010).)

## B.  Rule 60(B) Motion

On May 22, 2009, Payne filed a Motion to Void Judgment under Ohio Civil

Rule 60(B).  In his motion, Payne argues that his indictment fails to list a mens rea

element of the crime charged, thus rendering both the indictment and his

subsequent conviction void, pursuant to State v. Colon, 118 Ohio St.3d 26, 885

N.E.2d 917 (2008)[1].  (Doc. 7, RX 19.)  The disposition of this motion is unclear to

this court.

In the respondent's Return of Writ, it states:  "In response, the State filed a

motion for summary judgment and proposed findings of fact and conclusions of law."

(Doc. 7, at 6, citing RX 20 and 21.)  However, the cited documents refer to "the

Petition for Postconviction Relief filed on October 9, 2009," not the Rule 60(B)

motion filed on May 22, 2009.  (Doc. 7, RX 20, at 1.)  Apparently, the petition for

postconviction relief was "seeking a new trial based upon new evidence."  Id. at 2,

and 5.  There is no mention in the motion for summary judgment of Payne's mens

rea argument, as put forward in his Rule 60(B) motion.  See generally doc. 7, RX 20.

Nor is there any indication of whether the state's motion for summary judgment on

---

[1]  Colon was subsequently overruled by State v. Horner, 126 Ohio St.3d 466,
935 N.E.2d 26 (2010).

5

the petition for postconviction relief was granted or denied, or what was the final determination on that petition.

Although Payne did file a motion seeking a new trial (see next section, below), pursuant to Ohio Crim. Rule 33, based on newly discovered evidence, that motion was not filed until Oct. 21, 2009.  See doc. 7, RX 22.  The state's motion for summary judgment cited above was filed earlier than that, on Oct. 19, 2009, and specifically states that it was filed in response to "the Petition for Postconviction Relief filed on October 9, 2009."  (Doc. 7, RX 20, at 1.)

The record before this habeas court would appear to be incomplete, then. Apparently missing from the record before this court are the following:

> 1.) The disposition of Payne's  May 22, 2009, Rule 60(B) motion.  See generally doc. 7, RX 19.

> 2) The petition for postconviction relief apparently filed by Payne on October 9, 2009.  See generally doc. 7, RX 20, at 1.

> 3) The state court's ruling on the petition for postconviction relief apparently filed by Payne on October 9, 2009, and the related motion for summary judgment filed on Oct. 19, 2009.  See generally doc. 7, RX 20.

However, the grounds of the habeas petition before the court do not require reference to the missing proceedings.  Nonetheless, the respondent is advised that the court expects to receive a complete record of the proceedings in state court when the respondent files a Return of Writ.

6

### C.  Motion for New Trial

On Oct. 21, 2009, Payne filed a motion for a new trial, based on newly discovered evidence, pursuant to Ohio Crim. Rule 33.  (Doc. 7, RX 22.)  The motion was denied by the trial court on Nov. 19, 2009.  (Doc. 7, RX 23.)  Payne filed two notices of appeal of the Nov. 19, 2009, judgment.  The first was filed pro se (doc. 7, RX 24, No. 94351), and the second was filed through counsel (doc. 7, RX 25, No. 94383).  The court of appeals subsequently dismissed the 94351 (pro se) appeal on Dec. 22, 2009, as a duplicate of the appeal filed through counsel (94383).  (Doc. 7, RX 26.)

Later, on April 13, 2010, the state court of appeals also dismissed the (94383) appeal of the denial of the motion for new trial, based on newly discovered evidence, as a duplicate of Payne's direct appeal (No. 92976).  (Doc. 7, RX 27.)

Payne filed a Motion for Reconsideration and Motion to Reinstate Appeal, through counsel, on April 28, 2010.  (Doc. 7, RX 28.)  In that motion, Payne pointed out that the issues involved in the 94383 appeal did not duplicate those raised in his direct appeal (92976).  He argued that the 94383 appeal concerned "statements of a co-defendant to a detective . . . that Mr. Payne was not on the scene, not in the stolen automobile and was unknown to him even after looking at a photo array, thus giving newly discovered evidence which would have exonerated Mr. Payne." (Doc. 7, RX 28, at [0216].)  Payne contends that this information was not available at the time of trial, and was not received by him until his direct appeal (92976) "had been filed and pending for some time."  Id.  Payne stated that this new information

7

led him to file the motion for new trial, the denial of which was the subject of the 94383 appeal.  Id.

The court of appeals denied Payne's motion for reconsideration of its sua sponte dismissal of the 94383 appeal "as a duplicate of Appeal No. 92976" on May 3, 2010.  (Doc. 7, RX 29; see also RX 27.)  Payne did not pursue further appeals.


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Payne has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se. McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

Several of the grounds put forward by Payne allege violations of the Ohio Constitution.  The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of the Ohio Constitution is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

## III.  SUFFICIENCY OF THE EVIDENCE

The first ground of the petition is:  "The evidence presented was not legally sufficient to support the conviction for having a deadly weapon and firearm specifications."

On direct appeal, the state court addressed this claim under the following standard:

> When determining whether a conviction is supported by sufficient evidence, the reviewing court views the evidence adduced at trial, both direct and circumstantial, in a light most favorable to the prosecution to determine if a rational trier of fact could find the essential elements of the offense were proven beyond a reasonable doubt.  State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372, 683 N.E.2d 1096.

(Doc. 7, RX 15, at 4; Payne, 2010 WL 2203012, at *2.)  The state court did not explicitly rely on federal constitutional law in making its ruling.

However, the state court relied on State v. Dennis, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096, 1105 (1997), which followed the sufficiency of evidence standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  (Doc. 7, RX 15, at 4; Payne, 2010 WL 2203012, at *2.)  Thus, the issue is whether the state court decision was an "unreasonable application" of clearly established federal law; in other words, whether the state court identified the correct governing legal principle from

10

Supreme Court decisions, but unreasonably applied that principle to the facts of Payne's case.  Williams, 529 U.S. at 410-412.

Under Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at 319; see also Cavazos v. Smith, 132 S.Ct. 2, 6 (2011) (per curiam); Bagby v. Sowders, 894 F.2d 792, 794 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990).  As quoted above, this was the standard applied by the state appellate court.  (Doc. 7, RX 15, at 4; Payne, 2010 WL 2203012, at *2.)  Thus, the state court identified the correct governing legal principle from Jackson v. Virginia.

Under Jackson, the habeas court does not make its own subjective determination of guilt or innocence.  Russell v. Anderson, No. 1:07CV3434, 2008 WL 4534144, at *3 (N.D. Ohio Oct. 6, 2008) (citing Herrera v. Collins, 506 U.S. 390, 402 (1993)); Talley v. Hageman, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing Herrera).  This court does not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury.  White v. Steele, 602 F.3d 707, 710 (6th Cir. 2009), cert. denied, 131 S.Ct. 130 (2010) (quoting Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009)); Dover v. Warden, Belmont Corr. Inst., No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009).

The Supreme Court recently emphasized that "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence

11

admitted at trial." Cavazos, 132 S.Ct. at 4.  The Court stressed that Jackson "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Cavazos, 132 S.Ct. at 6 (quoting Jackson, 443 U.S. at 326).  "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012) (per curiam) (quoting Cavazos).

On habeas review, "the Jackson v. Virginia standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" Davis v. Lafler, 658 F.3d 525, 534 (6th Cir. 2011) (en banc), cert. denied, 132 S.Ct.1927 (2012) (quoting United States v. Oros, 578 F.3d 703, 710 (7th Cir. 2009)).  The Supreme Court recently affirmed that "Jackson claims face a high bar in federal habeas proceedings." Coleman v. Johnson, 132 S.Ct. at 2062.

A sufficiency of the evidence claim must be addressed "with explicit reference to the substantive elements of the criminal offense as defined by state law." Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting Jackson, 443 U.S. at 324 n.16).  Thus, the federal court must look to state law to determine the elements of the crime. Cameron v. Birkett, 348 F.Supp.2d

825, 838-839 (E.D. Mich. 2004) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999)).

On appeal, Payne argued that the evidence presented was insufficient to prove that the BB gun at issue was a deadly weapon or firearm as defined in Ohio Rev. Code § 2923.11(A) and (B).  (Doc. 7, RX 10, at 5.)  He claimed that, while it may constitute a deadly weapon, a BB gun does not qualify as a firearm under Ohio Rev. Code § 2923.11(B).  Id. at 6.  Payne contended that the evidence presented as to the use of the BB gun as a deadly weapon was insufficient to sustain the convictions for having a deadly weapon with firearms specifications.  Id. at 10.

The state court of appeals ruled on this claim as follows:

> R.C. 2923.11(B)(2) provides that a trier of fact may rely upon circumstantial evidence, "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."  The circumstantial evidence may include, but is not limited to, "the representations and actions of the individual exercising control over the firearm."  Id.

> Payne claims his convictions are not supported by sufficient evidence because the State failed to present any evidence that the BB gun found in the Dodge Intrepid was capable of firing like a gun or causing deadly harm.  However, Smith testified that he saw the gun Payne pointed at him and that it looked like a black 9mm pistol.  He explained that the gun pointed at him looked like a real handgun because he saw the outer ring and it looked like a bullet would fit inside.  When presented with the BB gun in court, Smith was unable to identify it as the same gun that was pointed at him.

> According to Smith's testimony, Payne brandished a gun while he was guarding the other men who were stealing Smith's mother's car.  It is possible that Payne disposed of the firearm while he was fleeing or that one of the other suspects took possession of the gun before fleeing. Smith testified that rather than merely brandishing the gun, Payne pointed the gun at him to aid the escape of his co-conspirators.  Such

13

an act implies a threat that the firearm was operable.  After viewing the evidence in a light most favorable to the prosecution, we find that sufficient evidence was presented to establish beyond a reasonable doubt that Payne possessed an operable firearm.

Moreover, Payne failed to raise the issue of the firearm when he raised the other issues in his Crim.R. 29 motion for acquittal.  This court has held that "if an accused does set forth specific grounds in a motion for judgment of acquittal, all grounds not specified are waived." State v. Cayson (May 14, 1998), Cuyahoga App. No. 72712, citing U.S. v. Dandy (C.A.6, 1993), 998 F.2d 1344, 1356-57 (finding that "[a]lthough specificity of grounds is not required in a [Crim.R. 29] motion, where a [Crim.R. 29] motion is made on specific grounds, all grounds not specified are waived [.]" (Internal citation omitted.)).

(Doc. 7, RX 15, at 4-6; Payne, 2010 WL 2203012, at *2-*3.)

The petition should not be granted on the basis of the first ground.  The state court identified the correct governing legal principle from Jackson v. Virginia, and this court does not find that the state court unreasonably applied that principle to the facts of Payne's case.  See Williams, 529 U.S. at 410-412.  This court cannot say that "no rational trier of fact could have agreed with the jury," and thus the petition should not be granted on the basis of the first ground, insufficiency of the evidence. See Coleman v. Johnson, 132 S.Ct. at 2062.

## IV.  DEFECTIVE INDICTMENT

The second ground of the petition is:  "Appellant was denied due process of law because the indictment charging him with Aggravated Robbery was constitutionally defective."  On appeal, Payne argued that the indictment failed to

include the requisite mens rea "for the display, brandishing, possession, or use of the alleged deadly weapon in an aggravated robbery."  (Doc. 7, RX 10, at 12.)

The state court of appeals ruled that Ohio Rev. Code § 2911.01(A)(1) is strict liability offense, and the state is not required to charge a mens rea.  (Doc. 7, RX 15, at 6-7; Payne, 2010 WL 2203012, at *3.)  The court made its determination based solely on Ohio law.  Id.

The respondent argues that the indictment was not defective, and it did not provide Payne with a lack of notice which hurt his ability to prepare a defense.  (Doc. 7, at 18.)  The respondent also notes that a defective indictment, without more, is not cognizable in a federal habeas action.  Id. at 18-19.

The U.S. Supreme Court has stated that, generally, "the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings."  Knewel v. Egan, 268 U.S. 442, 446 (1925).  The Fifth Amendment right to a grand jury indictment has never been found to be incorporated against the states.  Williams v. Haviland, 467 F.3d 527, 531-532 (6th Cir. 2006) (citing cases) (Supreme Court has repeatedly asserted that Grand Jury Clause does not apply to states).  The sole Constitutional issue is whether the indictment provides the defendant with sufficient information of the charged offense, to enable him to defend himself against the accusations.  Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002), cert. denied, 540 U.S. 853 (2003); Blake v. Morford, 563 F.2d 248, 250 (6th Cir. 1977), cert. denied, 434 U.S. 1038 (1978).  See also Cole v. Arkansas, 333 U.S. 196, 201 (1948); Hartman v. Lee, 283 F.3d 190, 195 n.5 (4th Cir. 2002), cert. denied, 537 U.S. 1114 (2003).  "Any other deficiencies

15

in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding." Roe, 316 F.3d at 570 (quoting Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986)).

Fair notice has been given when the charged offense is "described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." Williams v. Haviland, 467 F.3d at 535. The indictment adequately apprises Payne of the crime of which he was charged. See generally doc. 7, RX 1. Where the defendant was fairly informed of the charges, and had sufficient information to be able to admit or deny the charges and to adequately prepare any defense that was available to him, there will be no federal due process violation. In any event, Payne does not challenge the indictment on that basis, but instead argues that the indictment did not meet the requirements under state law, as set forth in Colon, 118 Ohio St.3d 26, 885 N.E.2d 917. The issue before this habeas court is whether the state court's determination in this case was contrary to clearly established federal law, as determined by the Supreme Court.

Payne has not established that the state court's determination in this case was contrary to clearly established federal law, as determined by the Supreme Court. The petition should not be granted on the basis of the second ground.


V.  EXCULPATORY EVIDENCE

The third ground of the petition alleges that the prosecution suppressed exculpatory evidence. On appeal, Payne argued that "exculpatory evidence, i.e., the

16

results of the fingerprint tests done on the Dodge Intrepid by the Cleveland police were withheld from the defense prior to the trial." (Doc. 7, RX 10, at 17.)  He contends that the state knew that the prints did not match the defendant's prints, yet failed to provide this information to him, and "did not disclose the identities of those persons whose prints were in the Intrepid even though the police held that information two weeks after the incident occurred." Id.

The state court rejected his assignment of error, as follows:

> In the third assignment of error, Payne claims his right to due process was violated because the State failed to disclose the identities of the two individuals whose fingerprints were found in the Dodge Intrepid. However, the record does not support this claim.
>
> According to the trial transcript, the State disclosed the identities of the two individuals whose fingerprints were found in the Dodge Intrepid.  Payne's trial counsel stated on the record:  "It is my understanding * * * two individuals were identified based on their fingerprints in car involved in this incidence.  One Dorian Simpson and one Justin Rogers."  Payne's trial counsel also sought a continuance until after the two named individuals were arrested so that all three defendants could be tried together.  Finally, Payne argued in closing arguments that fingerprints of two individuals other than Payne were recovered in the Dodge Intrepid.  Therefore, Payne's argument on appeal that the State did not disclose the identities of these individuals is without merit.

(Doc. 7, RX 15, at 7-8; Payne, 2010 WL 2203012, at *3-*4.)

In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court imposed upon the prosecution in a criminal case the "obligation to turn over material that is both favorable to the defendant and material to guilt or punishment."  United States v. Bencs, 28 F.3d 555, 560 (6th Cir.1994), cert. denied, 513 U.S. 1117 (1995).  "Materiality pertains to the issue of guilt or innocence, and

17

not to the defendant's ability to prepare for trial." Bencs, 28 F.3d at 560 (citing United States v. Agurs, 427 U.S. 97, 112 n. 20 (1976)).

To establish a Brady violation for habeas relief, Payne must establish three elements: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." O'Hara v. Brigano, 499 F.3d 492, 502 (6th Cir. 2007) (citing Strickler v. Greene, 527 U.S. 263, 281-282 (1999)).

The respondent contests the second element, and argues that Brady is not violated when the prosecution discloses the evidence at issue prior to trial. (Doc. 7, at 21.) The Sixth Circuit has found that there is no Brady violation for a "delayed disclosure of exculpatory information, but only [for] a complete failure to disclose." O'Hara, 499 F.3d at 502; Bencs, 28 F.3d at 560-561. "Delay only violates Brady when the delay itself causes prejudice." Bencs, 28 F.3d at 561(quoting United States v. Patrick, 965 F.2d 1390, 1400 (6th Cir. 1992)). Here, there was no prejudice: Payne received the information concerning the fingerprints prior to trial, and addressed that evidence with the factfinder at trial. (Doc. 7, RX 15, at 7; Payne, 2010 WL 2203012, at *4.)

Payne has not established that the state court's determination in this case was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. The petition should not be granted on the basis of the third ground.

18

## VI.  IDENTIFICATION

The fourth ground of the petition is that Payne was subjected to an impermissibly suggestive identification procedure.  On direct appeal, Payne argued that he was subjected to a "cold stand" identification, which he contended was impermissibly suggestive.  (Doc. 7, RX 10, at 19-23.)

An identification will violate a defendant's right to due process if the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Simmons v. United States, 390 U.S. 377, 384 (1968); Gross v. Warden, Lebanon Corr. Inst., No. 08–4727, 2011 WL 1597659, at *11 (6th Cir. Apr. 27, 2011); Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005), cert. denied, 546 U.S. 1100 (2006).  "It is the likelihood of misidentification which violates a defendant's right to due process."  Howard, 405 F.3d at 469 (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972)).  It is the petitioner's burden of proof to show that the procedure was unduly suggestive.  Tipton v. Carlton, No. 06-5496, 2008 WL 5397785, at *4 (6th Cir. Dec. 29, 2008), cert. denied, 130 S.Ct. 279 (2009) (citing Ledbetter v. Edwards, 35 F.3d 1062, 1071 (6th Cir. 1994)).

If the petitioner meets the burden of showing impermissible suggestiveness, then the court will evaluate the reliability of the identification under the totality of the circumstances.  Tipton, 2008 WL 5397785, at *4; Haliym v. Mitchell, 492 F.3d 680, 704 (6th Cir. 2007); United States v. Sullivan, 431 F.3d 976, 985 (2005).  If there is no showing of an impermissibly suggestive process, the court need not

assess the reliability of the identification.  Williams v. Lavigne, No. 05-1398, 2006 WL 3780364, at *3 (6th Cir. Dec. 22, 2006), cert. denied, 552 U.S. 910 (2007) (Clay, J., concurring) (citing Neil v. Biggers, 409 U.S. at 199).

Even where the identification procedure is shown to be impermissibly suggestive, if the identifications are reliable, they will be admissible.  Grayer v. McKee, No. 04-1335, 2005 WL 2186115, at *7 (6th Cir. Sept. 9, 2005), cert. denied, 547 U.S. 1059 (2006) (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977)). "Reliability is the linchpin in determining the admissibility of identification testimony."  Howard, 405 F.3d at 469 (quoting Manson, 432 U.S. at 114).  In assessing reliability, the court considers:

> . . . the totality of the circumstances, including the factors described in Manson and Biggers: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification.

Howard, 405 F.3d at 472 (citing Manson, 432 U.S. at 114, Neil v. Biggers, 409 U.S. at 199-200); see also Gross, 2011 WL 1597659, at *11; Haliym, 492 F.3d at 704; Grayer, 2005 WL 2186115, at *7.

The state court of appeals ruled on Payne's claim as follows:

> In the fourth assignment of error, Payne argues he was subjected to an impermissibly suggestive cold stand identification procedure.  He claims that Smith was unable to see his face at the time of the out-of-court identification and that Smith could not have been able to see him during the alleged crime because he must have been shocked by what was happening.  We disagree.

20

Due process requires suppression of an out-of-court identification if the confrontation procedure was "unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Davis, 76 Ohio St.3d 107, 112, 1996-Ohio-414, 666 N.E.2d 1099, citing State v. Waddy (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819; Manson v. Brathwaite (1977), 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140; Neil v. Biggers (1972), 409 U.S. 188, 196-198, 93 S.Ct. 375, 34 L.Ed.2d 401. In Neil v. Biggers, the United States Supreme Court set forth certain factors to be considered in evaluating the reliability of a show-up identification including the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Id. at 199.

Here, the record reflects that Smith looked at Payne for four seconds as Payne pointed the gun at him. During this time, Payne had a clear view of Payne's face because he was standing five or six feet away from him. He told police that the driver was wearing a black jacket and a black knit stocking cap pulled down to just above his eyebrows. The police had Payne in custody and presented him for possible identification within forty-five minutes after the crime was committed. When the police approached Smith to conduct the identification procedure, they simply told him that they had "a possible suspect." They made no mention of what role Payne might have played in the crime.

Nonetheless, upon seeing Payne, Smith immediately stated: "That's him." He identified Payne as the driver of the Dodge Intrepid and as the one who pointed the gun at him. Under these circumstances, we find the cold stand procedure conducted in this case was reliable and not impermissibly suggestive.

(Doc. 7, RX 15, at 8-9; Payne, 2010 WL 2203012, at *4-*5.)

The state court identified the correct governing legal principles from the U.S. Supreme Court's decisions in Manson v. Brathwaite and Neil v. Biggers, (doc. 7, RX 15, at 8; Payne, 2010 WL 2203012, at *4), thus the question for this court becomes whether the state court unreasonably applied those principles to the facts of Payne's

21

case.  Williams, 529 U.S. at 413.  As noted earlier, a state court decision is not unreasonable simply because this court considers the state decision to be erroneous or incorrect.  Rather, the court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-412; Lorraine, 291 F.3d at 422.

The Supreme Court has recently re-affirmed that "an unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (quoting Williams, 529 U.S. at 410); Hanna v. Ishee, 694 F.3d 596, 606 (6th Cir. 2012).  The Court instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S.Ct. at 786 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); Hanna, 694 F.3d at 606; Peak v. Webb, 673 F.3d 465, 472 (6th Cir. 2012), cert. denied, ___ U.S. ___, 2013 WL 141231 (Jan. 14, 2013).

Payne argues that, where a defendant is subjected to an impermissibly suggestive identification procedure, such as a "cold stand," the identification is tainted and violates his due process rights.  (Doc. 8, at p. IX.)  However, the Supreme Court in Manson v. Brathwaite rejected a simple "per se" approach which "focuses on the procedures employed and requires exclusion of the out-of-court identification evidence, without regard to reliability, whenever it has been obtained through unnecessarily suggested confrontation procedures."  Manson, 432 U.S. at

110.  Instead, the Court ruled:  "Reliability is the linchpin in determining the admissibility of identification testimony."  Manson, 432 U.S. at 114; Howard, 405 F.3d at 469.

The focus of the state court's decision was the reliability of the identification. The Supreme Court has found that, if the challenged identification is reliable, then testimony concerning it is admissible.  Manson, 432 U.S. at 110 n.10, 114. Considering the circumstances of this case, particularly the opportunity of Smith to view Payne at the time of the initial confrontation, Smith's degree of attention, the level of certainty shown by Smith when identifying Payne,  and the brief length of time between the initial observation and the identification (see, e.g., Howard, 405 F.3d at 472), the court cannot find under all the circumstances of this case that there was "a very substantial likelihood" of misidentification.  Manson, 432 U.S. at 116.  The court cannot find that the state court's determination was an unreasonable application of clearly established federal law.

Payne has not established that the state court's determination on this issue involved an unreasonable application of clearly established federal law, as determined by the Supreme Court in Manson v. Brathwaite and Neil v. Biggers. The petition should not be granted on the basis of the fourth ground.

## V. SUMMARY

The petition for a writ of habeas corpus should be denied.  Payne has not established that the state court's decision was contrary to, or involved an

23

unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be denied.

Dated:  Jan. 28, 2013                   /s/ Kenneth S. McHargh
                                        Kenneth S. McHargh
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).